UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DORRIS DEMISON,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,[1]<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | No. ED CV 06-297-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 21, 2006, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on April 5, 2006, and April 12, 2006. Pursuant to the Court's Order, the parties filed a Joint Stipulation on December 14, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 1, 2007.

## II.

## BACKGROUND

Plaintiff was born on November 12, 1955. [Administrative Record ("AR") at 94.] She attended school through the tenth grade, and has past work experience as, among other things, a laborer, care provider, marker, child monitor and nurse assistant. [AR at 199, 210-12, 250.]

On June 19, 2003, plaintiff protectively filed a claim for Supplemental Security Income payments. [AR at 94-96, 207.] Plaintiff alleged disability due to, among other things, headaches, pain in her back and neck, tingling and numbness in her muscles and bones, numbness in her face, dizziness, fatigue, and mood swings. [AR at 18, 198.] Plaintiff claimed that she has been unable to work since May 19, 2002. [AR at 94, 207.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Hearings were held on February 3, 2005, and March 14, 2005, at which plaintiff appeared with counsel and testified on her own behalf. Testimony was also received from medical and vocational experts. [AR at 826-57, 858-86.] On April 29, 2005, the ALJ concluded that plaintiff was not disabled and thus not entitled to Supplemental Security Income payments. [AR at 18-23.] When the Appeals Council denied review on January 19, 2006, the ALJ's decision became the final decision of the Commissioner. [AR at 8-11.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The plaintiff has the burden of proving that she is unable to perform her past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy; the determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, the ALJ remarked that plaintiff asserted that she has not engaged in substantial gainful activity since her alleged onset date, and the ALJ did not find otherwise (step one). [AR at 19.] At step two, the ALJ concluded that plaintiff has severe impairments as follows: "an affective disorder and a somatoform disorder, hypertension, asthma and neck pain." [AR at 19.] At step three, the ALJ found that plaintiff's impairments do not meet or equal the requirements of any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff has the residual functional capacity[2] to perform a limited range of light work.[3] [AR at 19.] The ALJ concluded that plaintiff could perform her past relevant work as a marker, but that this job does not exist in significant numbers in the regional or national economies (step four). [AR at 22.] The

---

[2]  Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]  Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). Specifically, the ALJ found that plaintiff can "lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours out of a given 8 hour period and [has] no significant restrictions in her ability to sit. [Plaintiff] is limited to work not requiring greater than occasional use of the right upper extremity for controls and work allowing moderately complex four to five step directions, performed in a habituated work setting and not requiring intense interpersonal interaction or rapid assembly line type work." [AR at 19.]

ALJ found at step five, relying on vocational expert evidence and Medical-Vocational Rule 202.18, that jobs exist in significant numbers in the regional and national economies that plaintiff can perform, and that plaintiff is thus not disabled. [AR at 22-23.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred by not properly considering: 1. the opinion of a treating physician; 2. lay witness testimony; 3. plaintiff's mental impairment; and 4. the side effects of plaintiff's medications. For the reasons stated below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

### A.  TREATING PHYSICIAN'S OPINIONS

Plaintiff argues that the ALJ failed to consider a Medical Report from the San Bernardino County Transitional Assistance Department, which is largely illegible, but which plaintiff contends diagnoses plaintiff with degenerative disc disease, spinal stenosis and bipolar disorder, and concludes that plaintiff is permanently disabled. Joint Stipulation, at 3; AR at 825. Plaintiff contends that the ALJ failed in not considering the Report, or in not recontacting the County to clarify the Report's contents.

The Court disagrees with plaintiff's position. First, this Report was not submitted to the ALJ, but was first received by the Appeals Council after the ALJ issued his decision. [AR at 11.] The council considered this "additional evidence" and still denied review of the ALJ's decision. [AR at 8.] Second, the Report is unsupported by any clinical evidence whatsoever. See Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (the ALJ need not accept a treating physician's opinion which is "conclusory and unsubstantiated by relevant medical documentation"); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings). Third, while the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and

observe the claimant (Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)), plaintiff has not even established that the Report was completed by a physician as opposed to some other staff member.[4] In any event, at most the form establishes disability from April 7, 2005, through October 31, 2005, a period of about six months. A showing of disability requires the inability to engage in substantial gainful activity for at least twelve months. 42 U.S.C. § 423(d)(1)(A). This Report does not serve to meet plaintiff's burden of proving disability. Tackett v. Apfel, 180 F.3d 1094, 1098 and n. 3 (9th Cir. 1999).

Neither is the illegible nature of the Report such as to trigger the ALJ's duty to recontact the treating facility. Even though the ALJ has "an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered" (Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)), an ALJ's duty to develop the record is triggered only when there is "ambiguous" evidence or when the record is "inadequate" to allow for proper evaluation of the evidence. Id.; see 20 C.F.R. §§ 404.1512(e), 416.912(e); Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). The Court finds that the record here was neither "inadequate" nor "ambiguous" merely because the single page document was largely illegible. As already discussed, even if considered in the light most favorable to plaintiff, the Report does not establish a twelve month period of disability, and the conclusions therein are not supported by clinical findings. Remand on this issue not warranted.

**B.      FAILURE TO CONSIDER LAY WITNESS EVIDENCE**

Plaintiff contends that the ALJ erred in not discussing the evidence provided in two third-party questionnaires, one submitted by plaintiff's friend Neomi Sheffield on March 4, 1998 [AR at 113-18], and the other submitted by plaintiff's friend Dee Wallace on November 24, 2003. [AR at 228-36.] In her questionnaire, Ms. Sheffield wrote that plaintiff spends a typical day at home lying around, taking medicine, and complaining of pain, and that she needs help getting around. [AR

---

[4] In the face of this argument by defendant in the Joint Stipulation, plaintiff did not respond with any information about the name or occupation of the individual who completed the Report.

at 113.] She relates that plaintiff suffers from insomnia, constant pain, and experiences nightmares. [AR at 114.] Plaintiff needs constant care and watching, and is unable to keep up her personal appearance. Her son prepares all of her meals, she does no shopping or household chores, goes out only to her son's school or to the doctor, has no hobbies or recreational activities, is forgetful, cannot complete tasks, and is afraid to sleep because of nightmares and pain. [AR at 114-18.]

In her questionnaire, Ms. Wallace indicated that she spends time with plaintiff about four days a week. During the day, plaintiff sleeps, takes her medications, and "stares and cries a lot because she said she miss[es] her dead daughter." Plaintiff calls Ms. Wallace during the night saying she is afraid; she has seen plaintiff stay up all night. Ms. Wallace makes sure that plaintiff's "personal parts [are] clean," as she "wets on herself" when using the toilet. Plaintiff cannot comb her own hair. Her sons prepare her food and feed her, someone is with her all day long, she does no chores, does no shopping, and cannot pay her bills. Ms. Wallace also indicates that plaintiff cannot read or write. She has no hobbies or interests, but just sits and stares. [AR at 228-36.]

As stated in 20 C.F.R. §§ 404.1513(d) and 416.913(d), judges may, "in addition to evidence from the acceptable medical sources . . . also use evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects [her] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d) (2005). Such other sources include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Thus, lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); see Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("[a]n eyewitness can often tell whether someone is suffering or merely malingering.... [T]his is particularly true of witnesses who view the claimant on a daily basis..."). An ALJ's consideration of lay testimony becomes especially important when a plaintiff alleges "that pain is a significant factor of his alleged inability to work and the allegation is not

supported by objective medical evidence in the file." SSR[5] 88-13; see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). To reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so. Dodrill, 12 F.3d at 919. Failure to consider lay testimony will be considered harmless error only if "it [is] clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

Here, the Court cannot conclude that the ALJ's total failure to consider or mention the third party evidence is inconsequential to the nondisability determination. See Robbins, 466 F.3d at 885 (noting the Ninth Circuit's conclusion in Stout that the Court "had never found harmless" an ALJ's silent disregard of lay witness testimony concerning the impact of an impairment on a claimant's ability to work). However, the Court agrees with defendant that the failure to consider Ms. Sheffield's statements is harmless. Her questionnaire was completed in 1998 in connection with plaintiff's prior disability application, five years prior to the filing of plaintiff's current application for Supplemental Security Income payments, and four years prior to the alleged onset date. The relevance of these statements as to plaintiff's ability to work after 2002 is thus minimal at best. Nevertheless, the Court cannot resolve this matter in defendant's favor based on its assertion that Ms. Wallace's statements are "largely inconsistent" with the objective medical findings, and that her answers do not "constitute significant probative evidence." The Court's review is limited to the reasons actually cited by the ALJ in support of his determination. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the . . . court to affirm the ALJ's . . . decision based on evidence that the ALJ did not discuss."). "We are constrained to review the reasons the ALJ asserts." Id. (citing Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001).

The ALJ rejected plaintiff's subjective complaints as not credible, and plaintiff does not challenge this portion of the decision. The reasons provided to reject her credibility, however --

---

[5] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

she has medical conditions that are not medically disabling; her motivation is questionable, and she has a poor work history; she is not maintained on psychotropic medications and was not seeing a psychiatrist; her unproductive lifestyle is her own choice; and the side effects from her medications are "entirely undocumented by the evidence of record" [AR at 21] -- are largely specific to plaintiff herself. Most of these reasons are not germane to, and could not be used to reject the statements of, Ms. Wallace. In fact, Ms. Wallace, who sees plaintiff on a regular basis, does provide corroboration for the insomnia and nervousness that the ALJ says are entirely unsupported by the evidence.[6]

Here, the ALJ gave absolutely no consideration to the statements of plaintiff's friend, let alone "careful consideration," despite the fact that those statements would show that plaintiff is severely limited in her activities, and support some of plaintiff's claims. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998); see also Sprague, 812 F.2d at 1231-32 (lay witness testimony by family members who have the opportunity to "observe" a plaintiff is qualified evidence that must be considered). Remand is warranted to allow the ALJ to consider whether the statements of plaintiff's friend, if credible, would alter plaintiff's residual functional capacity, and thus her ability to work.

## C.  THE RATING OF PLAINTIFF'S MENTAL IMPAIRMENT

The ALJ concluded that plaintiff suffers from the severe impairment of, among other things, an affective disorder. [AR at 19.] Psychological expert Joseph Malancharuvil testified that plaintiff has a severe mental impairment including an adjustment reaction with mixed emotions and dysphoric mood. [AR at 19, 863.] He further testified that she has mild limitations in activities of daily living, mild to moderate limitations in social functioning, mild to moderate limitations in concentration, persistence or pace, and no episodes of decompensation. [AR 863-64.] The ALJ

---

[6]  Ms. Sheffield confirms that plaintiff experiences nightmares and insomnia.

cited these findings in his decision,[7] but did not refer to episodes of decompensation, or make any specific findings in his decision as to these functional areas. [AR at 19.]

Plaintiff argues that the ALJ failed to rate the degree of her functional limitations in the areas of activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation, as required by 20 C.F.R. § 416.920a(c).  To the extent § 416.920a(e)(2) requires a "specific finding" in the decision as to the degree of limitation in each of the functional areas, the Court agrees with plaintiff.  On remand, the ALJ is directed to explicitly comply with the requirements of 20 C.F.R. § 416.920a.

**D.   SIDE EFFECTS OF MEDICATION**

Plaintiff also asserts that the ALJ did not properly address the type, dosage, effectiveness and side effects from her medications.  Joint Stipulation at 13-16.  The only evidence in the record cited by plaintiff as to this issue, however, is plaintiff's description from her Disability Report that her medications cause an inability to remember a lot of things, dizziness, unsteadiness, fatigue, nausea, mental or mood change, difficulty moving, stiffness, uncontrolled movements and insomnia. [AR at 203; see Joint Stipulation at 13.] Plaintiff merely refers to a medical guide to show that her medications can in fact cause all of these side effects.  The ALJ's statement that plaintiff "did not offer any of these adverse side effects to any treating sources or consultative medical examiners" is an accurate account, and is unrebutted by plaintiff.  [AR at 21-22.]  See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (an ALJ is not required to credit testimony regarding side effects of medication in the absence of clinical evidence substantiating the side effects). Plaintiff cites to nothing in the record that is inconsistent with the ALJ's conclusion regarding her medications or their alleged effects or effectiveness.  Moreover, even accepting plaintiff's argument that the medications make her dizzy,  tired, or have some other impact on her does not mean that she is debilitated or significantly impaired by the side effects of her medication.  See

---

[7] The ALJ reported that Dr. Malancharuvil assigned a mild limitation to plaintiff's maintaining concentration, persistence or pace. [AR at 19.] Dr. Malancharuvil set the limitation as mild to moderate. [AR at 864.]

Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) ("There were passing mentions of the side effects of Mr. Osenbrock's medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with Osenbrock's ability to work. When the ALJ asked Mr. Osenbrock to specify the most significant side effect from all the medications he took, Mr. Osenbrock stated "dozing off" and "dry mouth."). The ALJ's conclusion is supported by the record, and remand on this issue is not warranted.[8]

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to allow for the consideration of plaintiff's friend's statements, and to properly rate plaintiff's mental impairment.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: March 21, 2007

/s/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[8] In considering plaintiff's friend's statements on remand, however, the ALJ should consider as well her statements to the extent they may be informative as to plaintiff's side effects from medication.